VAUGHAN & BARNES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7311.   Promulgated May 11, 1927.

1. A salary was duly authorized by corporation action in 1912. The services were performed pursuant to said authorization in 1921, in which year the corporation was without funds to pay the salary. The salary was paid in 1922. The corporation accounted on the basis of cash receipts and disbursements. The salary is allowed as a deductible expense in 1922.

2. Certain salaries of officers were authorized by corporate resolution in 1922, as and for the year 1922 but measured by services and circumstances surrounding the payment of salaries in 1921. Such salaries allowed as deductible expenses in 1922.

3. Salaries authorized and paid in a given year as and for salaries in a prior year are not allowable as deductible expenses in the year in which authorized and paid.

4. Matter of what constitutes reasonableness of salaries discussed.

*William H. White, Jr., Esq.,* for the petitioner.
*W. Frank Gibbs, Esq.,* for the respondent.

Proceeding for the redetermination of income and profits taxes for the fiscal year ended August 31, 1922. The deficiency determined by the Commissioner, and of which the petitioner was notified on July 31, 1925, is in the amount of $4,864.29.

### FINDINGS OF FACT.

Petitioner is a Virginia corporation with its principal office in Norfolk, and is engaged in business as a " cotton factor." It was incorporated in 1912 and succeeded a predecessor business carried on by John N. Vaughan trading as Vaughan & Barnes. Prior to the death of Barnes in 1890 the business had been a partnership.

During the taxable period and prior thereto, the nature of the business of the petitioner was as follows: In the spring of each year the company makes loans principally to country merchants who sell supplies to farmers in the cotton-growing districts. These loans carry the current rate of interest and are secured by collateral furnished by the merchant. The loan agreement obligates the merchant to ship an agreed amount of cotton to petitioner, which amount varies with the amount of the loan. In the early fall this cotton is shipped to and received by the petitioner and by it stored in warehouses in Norfolk where it is held for sale subject to the merchant's directions. Upon receipt of instructions from the merchant, the cotton is sold by petitioner and a commission is charged therefor. The rate of commission is fixed by the Norfolk Cotton Exchange and is 1 per cent of the gross sale. When the petitioner sells the cotton, it reimburses *itself* for the loan made to the merchant with interest; for the charges for storage, insurance and handling of the cotton, and deducts its commission. The balance is remitted to the merchant who shipped the cotton.

In the years 1921 and 1922 the capital stock of the petitioner was $50,000, held as follows:

| | |
|---|---|
| John N. Vaughan, president | 300 shares |
| L. F. Bruce, treasurer | 100 shares |
| B. C. Crews, secretary | 50 shares |
| H. Pincus, assistant secretary | 50 shares |

In order to carry on a business of the character and volume of the petitioner, it was necessary to borrow large sums of money. This was necessary in order that the loans above referred to might be made to the merchants. At the end of the fiscal year 1921, the petitioner owned Vaughan approximately $213,355.39. In addition, it owed banks $335,000. At the end of the fiscal year 1922 the petitioner owed Vaughan approximately $216,134.73, while its obligations to banks were very small.

At a meeting of the directors on May 2, 1912, the following resolutions were adopted:

Upon motion duly made, seconded, and unanimously adopted, the following salaries were fixed for the several officers of this corporation: President, $12,000; Treasurer, $1,500; Secretary, $1,200; Assistant Secretary, $900; and it was further resolved that in addition to the above named amounts, the Treasurer shall receive 15 per cent of annual profits of the business, the Secretary 10 per cent, and the Assistant Secretary 8 per cent, all to be calculated annually. Said profits, however, to be fixed and determined upon the following basis, that is to say

1st. After the payment of taxes, license and charges due to the State, City, and Government,

2d. After the payment of all rents.

3d. After the payment of all incidental expenses of the business, including all interest charges for money borrowed or otherwise. The salaries of all the above named officers, except the president, and including all salaries and compensation to clerks or other employees of the company, servants and laborers, insurance and telegraph bills, stationery bills, stamps and generally all such incidental expenses as are now necessary in the proper conduct of the business and a dividend equal to 6 per cent of the stock of the company outstanding, it being the purpose and intention of this resolution to provide for an increase in the salaries hereinbefore specified and provided to the said several officers to be paid in the proportionate amounts hereinbefore named out of the profits of the business which may remain after the deduction of the hereinbefore mentioned charges of conducting and maintaining the same.

At the end of the fiscal year 1921 the books of the petitioner disclosed a loss for that year. During that year Bruce, Crews, and Pincus had been paid their fixed salaries of $1,500, $1,200, and $900, respectively. These three men were heads of families and the salaries so drawn were deemed insufficient for the support of their families, and accordingly, they had, with the knowledge, consent and agreement of all the stockholders and officers, drawn additional amounts in that year as follows: Bruce $1,500, Crews $1,200, Pincus $1,200. These additional withdrawals were considered loans and were treated as such and carried by the petitioner in its balance sheet for the fiscal year 1921 as "accounts receivable." Vaughan did not receive payment in the fiscal year 1921 for his services as president during that year.

The business proved more profitable in the fiscal ·year 1922, and on August 31, 1922, the following resolution was adopted by the directors:

It was ordered that the following named employees be paid the following respective amounts, as provided by previous resolutions May 2, 1912:

| | | |
|---|---:|---|
| L. F. Bruce, treasurer_____ | 8, 376. 93 | 15 per cent |
| B. C. Crews, secretary_____ | 5, 584. 62 | 10 per cent |
| H. Pincus, assistant secretary_____ | 4, 467. 69 | 8 per cent |
| J. G. Lindsay_____ | 1, 116. 92 | 2 per cent |

The treasurer was requested to set aside the amount of $300.01 as reserve for any further taxes which would be due as a result of the years' operations.

On motion duly made, seconded and unanimously carried, the salary of John N. Vaughan, President, in the amount of $12,000 for the previous year 1921 was ordered paid out of the remaining balance, and in addition thereto the following were voted extra compensation to make up for lack of same in 1921:

| | |
|---|---:|
| L. F. Bruce_____ | 4, 800 |
| B. C. Crews_____ | 2, 400 |
| J. N. Vaughan_____ | 2, 400 |
| H. Pincus_____ | 2, 400 |
| | 12, 000 |

The obligations to the petitioner of Bruce, Crews, and Pincus arising out of their additional withdrawals in the fiscal year 1921, above referred to, were liquidated and canceled and the difference between those amounts and the amounts voted to be paid to them in the last quoted resolution, was paid to them in cash. In addition thereto, the additional payments authorized in the last quoted resolution were duly made.

The petitioner in filing its return of taxable income for fiscal year 1922, claimed deduction on account of salaries in the amount of $58,329.24, as follows:

| | |
|---|---:|
| J. N. Vaughan, president, salary for 1921_____ | $12, 000* |
| J. N. Vaughan,    "    "    " 1922_____ | 12, 000 |
| J. N. Vaughan,    "    bonus " 1922_____ | 2, 400* |
| L. F. Bruce, treasurer, salary   " 1922_____ | 1, 500 |
| L. F. Bruce,    "    bonus   " 1922_____ | 4, 800* |
| L. F. Bruce,    "    15 per cent of profits_____ | 8, 376. 93 |
| B. C. Crews, secretary, salary for 1922_____ | 1, 200 |
| B. C. Crews,    "    bonus   " 1922_____ | 2, 400* |
| B. C. Crews,    "    10 per cent of profits_____ | 5, 584. 62 |
| H. Pincus, assistant sec. salary for 1922_____ | 1, 200 |
| H. Pincus,    "    "   bonus " 1922_____ | 2, 400* |
| H. Pincus,    "    "   8 per cent profits_____ | 4, 467. 69 |
| Total_____ | 58, 329. 24 |

All of the foregoing items were allowed as deductions by the Commissioner with the exception of those items indicated by asterisks,

which were disallowed by the Commissioner and restored to income. The items disallowed are tabulated as follows:

| | | |
|---|---|---|
| J. N. Vaughan___ | $12,000 | salary for 1921 ordered paid in 1922 by resolution of Aug. 31, 1922. |
| J. N. Vaughan __ | 2,400 | bonus paid in 1922 by resolution of Aug. 31, 1922. |
| L. F. Bruce_____ | 4,800 | "        "        "        " |
| B. C. Crews_____ | 2,400 | "        "        "        " |
| H. Pincus_____ | 2,400 | "        "        "        " |
| | 24,000 | |

In addition to the deductions for salaries set out above, the respondent allowed a deduction of $1,116.92 paid in fiscal year 1922 to J. G. Lindsay, an employee, who was not a stockholder of the petitioner. The allowed amount of $1,116.92 represented 2 per cent of the profits of the year.

The petitioner accounted and made return of its income on the basis of cash receipts and disbursements.

During the fiscal year 1921 the business of the petitioner was light and as a result the labors of its officers were light. But during the fiscal year 1922, the business of the petitioner was abnormally heavy and the labors of its officers were correspondingly heavy. The officers were required by circumstances to work long hours during the day, as well as at nights and on Sundays. The volume of business transacted by the petitioner in 1922, measured by the sales of bales of cotton, was about twice that transacted in 1921. Vaughan, the president, had general authority and direction of the affairs of the company; Bruce, the treasurer, arranged the financing of the company with the banks, passed on credits and made arrangements with customers, and was in charge of sales; Crews, the secretary, kept the books of the petitioner, attended to arrangements respecting storage, insurance and warehousing, invoiced the sales and prepared statements and the like; Pincus, the assistant secretary, graded and valued the cotton and assisted largely in the selling, to a large extent attended to sales on his own responsibility, and assisted generally in the office work.

The gross income reported by petitioner for fiscal year 1922 was $118,190.87, while its net income after deducting salaries in the amount of $58,329.24, was $3,294.43. Of this last amount, the petitioner, on August 31, 1922, distributed $3,000 as dividends to its stockholders.

OPINION.

KORNER,[1] *Chairman:* The issue here involves the deductibility, as salaries and compensation for personal services, of $24,000 paid

[1] This decision was prepared during Mr. Korner's term of office.

in 1922 under the circumstances set out in the findings. Of this amount Vaughan, the president, received $12,000 in payment of salary for 1921 which had theretofore been authorized but which, due to lack of funds in 1921, had not been paid to him. The remaining $12,000 represents additional compensation to the officers authorized by resolution of August 31, 1922—the last day of the fiscal year. The issue naturally divides itself into two elements, the first concerning the $12,000 paid to Vaughan as salary for 1921, and the second concerning the additional amounts paid as set out above.

The first of these items is clearly allowable. A salary of $12,000 to the president had been voted and authorized by the resolution of May 2, 1912—ten years before the taxable year in question here. The president, Vaughan, had performed his duties as president in the year 1921, but the financial condition of the company did not permit the payment of his salary in the year in which the services were performed. The next year the money was available and the salary was paid. The petitioner accounted on the basis of cash receipts and disbursements. The resolution of August 31, 1922, in so far as it authorized the payment of Vaughan's salary for 1921, was surplusage. He was entitled to it anyway. The petitioner owed him that salary because it had not paid it to him the year before. The respondent is in error. The salary being paid in 1922 should be allowed as a deduction in that year.

The second group of items, amounting to $12,000, presents a more difficult question. It is necessary, first, to determine what these items represent. Was this "extra compensation" voted for and paid in the year 1922 while measured by services performed in the year 1921, or was it voted and paid in 1922 as and for salaries in 1921? The language of the resolution of August 31, 1922, is ambiguous and might be susceptible to either interpretation. The resolution says:

On motion duly made, seconded and unanimously carried * * * the following were voted extra compensation to make up for lack of same in 1921 * * *.

If the interpretation be that contained in the second query above, then we are of opinion that the deduction should not be allowed. That is to say, if the compensation voted and paid in 1922 was the payment of additional salaries *as and for* a prior year, without previous authorization therefor, it would not properly be allowable in 1922. The reason is obvious. To hold otherwise would permit a corporation with a large surplus in 1922 to effectually dispose of that surplus by voting salaries over a long series of prior years. No simpler method of evading taxes could be thought of. *J. E. Duval Printing Co.*, 1 B. T. A. 1205; *H. T. Cushman Mfg. Co.*, 2 B. T. A. 39; *Matchless Metal Polish Co.*, 2 B. T. A. 79; *Melrose Granite*

*Co.*, 2 B. T. A. 113; *Columbia Textile Co.*, 2 B. T. A. 472; *W. W. Harrison Co.*, 4 B. T. A. 174; *W. K. Henderson Iron Works & Supply Co.*, 6 B. T. A. 92.

But the authorization and payment of salaries in a given year as and for salaries in that year, where the amount thereof is in part measured by services performed in a prior year and in the light of circumstances surrounding the payment of salaries already paid in those years, presents a different situation. This is subject to the modification that the salaries paid in the given year come within the statutory definition of "a reasonable allowance for salaries or other compensation for personal services actually rendered." We should be very cautious in substituting our judgment as to the reasonableness of salaries for that of the corporation itself.

We conclude, therefore, that under the conditions just outlined, where a salary is authorized and paid in a given year as and for salary in that year, although one of the impelling influences in determining the amount to be paid was the services and circumstances surrounding the prior year, and when such payments for the year in which paid are reasonable in amount, the deduction therefor is properly allowable. The Board has so held in *C. H. Simonds Co.*, 1 B. T. A. 105, 107, wherein we said:

> The fact that the measure of the additional compensation was the amount of the reduction in salaries suffered during the period above mentioned is not proof that the additional amounts paid for 1918 were not in reality additional compensation for services performed by the officers during the year 1918.

Again, in *Lihue Plantation Co., Ltd.*, 2 B. T. A. 740, 742, the Board said:

> So long as additional compensation paid within a year does not exceed a reasonable amount it may be deductible even though it is measured by services rendered and compensation received in prior years.

To the same effect: *Flint River Brick Co.*, 2 B. T. A. 31; *H. T. Cushman Mfg. Co.*, 2 B. T. A. 39; *Van De Kamps Holland Dutch Bakers*, 2 B. T. A. 1247.

A case well nigh on all fours with the instant case is that of *Union Dry Goods Co.*, 1 B. T. A. 833. There a resolution was passed in 1918 reciting that "the back salary should be credited for the years ending July 31, 1915, 1916, 1917, and 1918." By the evidence it was shown that by the resolution it was meant to pay additional salaries for the taxable year in question, 1918. The Board said:

> We conclude from the evidence that the additional salaries paid to taxpayer's officers, pursuant to the action of the advisory board, taken on July 12, 1918, were, and were intended to be, additional compensation for personal services actually rendered by them in the fiscal year ended July 31, 1918.

As we have said above, the language of the resolution in the instant case, of August 31, 1922, is ambiguous and gives rise to a reasonable doubt as to its meaning. However, in view of our interpretation of a similar given state of facts, we conclude that the resolution of August 31, 1922, was intended to authorize additional compensation for the fiscal year 1922, measured by the services of the recipients of the compensation in a prior year.

The respondent contends that the sum of the two items of $12,000, which is here in controversy, shows a distribution of profits in the ratio of stockholdings but in the guise of salaries. He calls attention to the fact that Vaughan held 60 per cent of the stock, Bruce 20 per cent, Crews 10 per cent, and Pincus 10 per cent; that adding the salary of Vaughan for 1921 to the additional compensation paid, the following is obtained:

Vaughan:
```
    1921 salary_____  $12, 000
    1922 bonus_____    2, 400
                                      ————————  $14, 400=60 per cent of $24, 000
Bruce, 1922 bonus_____  4, 800   4, 800=20 per cent of  24, 000
Crews, 1922 bonus_____  2, 400   2, 400=10 per cent of  24, 000
Pincus, 1922 bonus_____  2, 400   2, 400=10 per cent of  24, 000
```

The predicate of respondent's position is (1) that the liability of the petitioner to pay Vaughan his salary for 1921 did not exist until after there had been sufficient profits to pay the other officers their salaries and percentages of the profits computed after other expenses had been met, and (2) that since there was a deficit in 1921, there was no liability to pay Vaughan any salary for that year.

If the foregoing predicate were founded in fact, there might be strong reasons for sustaining his contention. But we can not find that such is the case. All hinges on the resolution of May 2, 1912. We are unable to find in that resolution that the salaries and percentages of net profits payable to Bruce, Crews, and Pincus were to be computed before ascertaining whether or not Vaughan was to receive any salary. The resolution provides first for definite and fixed salaries for the officers, including Vaughan. The resolution then continues—" and it was further resolved that, in addition to the above named amounts [specific annual salaries], the Treasurer shall receive 15% of the annual profits of the business, the Secretary 10% and the Assistant 8%, all to be calculated annually. Said profits, however, to be fixed and determined upon the following basis * * *." Then follows the method of computing the profits which were to be divided. No provision is made that the designated salary of the president shall depend on the amount of the profits. On the contrary, it would appear that the profits were to be computed without reference to the president's salary. It seems to have been the intent

to deduct all salaries of officers, except the president's, from gross profits to ascertain net profits as the basis for the payment of the percentages to the treasurer, secretary, and assistant secretary.

If, as we have held, the salary of $12,000 for 1921 was due and payable to Vaughan under the former authorization of May 2, 1912, the remaining $12,000 was not distributed in its entirety to the stockholders in proportion to their stockholdings. That failing, the conclusion of the respondent is unsupported in fact.

A further contention of the respondent is that in any event the salaries and compensation paid were unreasonable. In the light of what we have said above, in this opinion, we conclude that the salaries paid for services in 1922 were reasonable. It should be noted that in spite of the salaries and compensation paid and after the deduction of all other allowable expenses, the petitioner declared and paid 6 per cent on its stock to its stockholders.

Accordingly, we find that the disallowance of the items aggregating $12,000 paid to Bruce, Crews, Pincus, and Vaughan was in error. They should be allowed as claimed by the petitioner.

*Judgment will be entered for the petitioner.*